The next case today is Primarque Products Co., Inc. v. Williams W. & Witt's Prod. Co. Appeal No. 1463 and Appeal No. 191484. Mr. Lawler, you may begin. Thank you. May it please the Court, my name is Andrew Lawler and I represent the appellant, cross-appellee, Primarque Products Co., Inc. in this matter. I ask at the outset if I may reserve six minutes for rebuttal of the cross-appellant's arguments. All right. With my initial time, I'll concentrate on two issues, the denial of prejudgment interest on the plaintiff's tort judgment. That issue is controlled by Massachusetts state law because this was a state law tort claim. In general law, Chapter 231, Section 6B provides, in essence, that any claim for consequential damages or property damages, in those cases, prejudgment interest will be awarded from the commencement of the action. In Massachusetts state law, the plaintiff's action was commenced in March of 2015. The trial court declined to award any prejudgment interest on the tort judgment, citing a federal district court case which in turn relied on Conway, a Massachusetts SJC case. The casual mail case in which Judge Hillman relied on overstated the ruling in Conway. It's casual mail. The federal district court case holds or held that the proposition in Conway is that prejudgment interest is not available on all future law classes. That overstates Conway. If you look closely at Conway, Conway defines or measures future from the point of judgment forward, not from the commencement of suit. The underlying purpose of prejudgment interest is to make the plaintiff whole for the loss of money. Here, the loss of money can be dated from the end of the one-year period when Primark lost prospective damages. And since this court has precedent from the Bonino case that it rigidly applies prejudgment interest, that it recognizes that the legislature made a number of offsetting judgment calls and decided to have prejudgment interest court cases run from commencement of suit. Since that time of Bonino, your court decision, Massachusetts SJC case, Massachusetts SJC came down with St. Paul surplus lines of insurance. And there, what the SJC said, well, if we inflexibly apply the prejudgment interest rule, it will provide a windfall to those plaintiffs who suffer losses after the commencement of the suit, but before judgment. And so we're going to run prejudgment interest from the date of the actual loss. And in that case, that was an insurance defense case. And so they ran the losses from the date of defense cost. And that all makes sense because if you measure loss before judgment, you are providing a windfall to the defendant because as in this case, our client was denied prospective losses, denied actual losses as of June of 2016. And this case was tried in May of 2018. So I suggest that the court, by not following St. Paul surplus lines of insurance and should have measured damages or should have measured prejudgment interest, not from the commencement of the lawsuit, which we acknowledge, but from the date that Primark clearly lost its profits, which in this case, one year after it stopped receiving profits would have been, if it was just one year, it would have been March of 2016. If it was 15 months and you add in the contract damages, it would have been June of 2016. Five minutes remain. Thank you. And so I suggest that the court, lower court made an error on the prejudgment interest. And ironically, the lower court, Paula Bonino, two months after our trial, jeopardizing cases, I found Goodrich for a SIN line. And in that case was a tort personal injury case. And the lower court actually applied prejudgment interest on future losses applying Bonino. So in any event, the court should have applied prejudgment interest from the date of loss prejudgment and did not. Moving to the second point, the jury awarded two sets of damages. It awarded $204,000 in tort damages. The trial court vacated the contract for $51,000 in damages, saying that it was duplicative of tort damages of $204,000. This was also a clear error because the court was bound to uphold the jury verdict. If there was any rational basis on which the jury could have appraised $255,000, here with purely mathematical precision, we show the jury that the annualized profit that Primark was incurring as of March of 2015, the date of the tort and the date of the contract breach was $204,000. The jury heard this case 38 months later in May of 2018. The court found in its ruling on our motions to amend the judgment, it was likely that the jury awarded $51,000 as contract damages and $204,000 as tort damages because $51,000 is exactly one quarter or two quarters. The court would have been correct if the jury heard this case on March of 2016 when only one year had elapsed from the contract breach and the tort. But it didn't hear the case exactly one year after. It heard the case 38 months thereafter. The jury very rationally could have concluded that Primark lost profits for 15 months and two separate consecutive periods of three months and 12 months. There wouldn't necessarily have to have been success or simultaneous losses because of the 38-month period between the time of the tort and contract breach and the time of the judgment. And so because there was a rational way for the jury to... I take it you're agreeing that for purposes of calculating whether the damages are overlapping, we should discount damages for that 90-day period from the tort. You can't recover tort losses during that 90-day period when there was no notice. You agree with that? I agree with that, Your Honor. Okay. So then the question is, how long is the period following that three-month notice period in which you suffered losses attributable to tortious interference? Correct? Yes. Okay. And the evidence with respect to the tortious interference loss, you're contending was evidence that showed that the losses persisted for longer than a year? Yes, for at least 15 months. Because the testimony at trial, again in May of 2018, was that Primark had not received any profit in 2015 from these seven customers. On the customized suit in 2016, had not received any profit. But the only problem I have is that we were dealing at that point with annualized contracts and they had a right to terminate within 90 days. Right. So after they did the 90-day period for the contract breach is assuming termination then. So then that would give you another nine months. But then at the end of that nine months, 12 months would have run. What would be the reason to think there was tortious interference with the next year's contracts? Because there hadn't been a new contract renewed. The whole theory was there would have been a breach of the contract. So it should have ceased at the next year. I don't understand. Right. So there was testimony that these customers had been customers of Primark for decades. Some for decades, some for as little as three or four years. But this is the cake and eat at two point. How can you recover on contract breach and yet recover losses for tortious interference that assumes there was no contract breach? In other words, the only damages post one year from tortious interference would be tortious interference with the new contract that would start at the end of one year. But the contract claim theory is that there was a breach of that initial contract without notice. Correct. Come effective after 90 days. So you get the losses on the contract for those 90 days. But I don't understand then how you can have a tortious interference claim that extends beyond the nine months thereafter and starts working on the second year when there's been a breach. Do you follow? I'm not sure I do, but I'll try as best I can. Primark would, but for the tortious interference and but for the breach, Primark would have been in a position to get a substitute arrangement. And because there was such a longstanding relationship between these customers and Primark, the jury would have rationally concluded that Primark would have continued to do business with these customers for 15 months had they had a supply of customized soup base. Because they lose the customized soup base, they're not in a position to fill orders. And now the customers have no choice. I'll conclude there and finish, revisit the point with my last six minutes. Thank you. At this time, would attorney Lewis, would you turn on your microphone and your video? Good morning, Mr. Lewis. You may proceed. Good morning, your honors. And thank you for this opportunity to argue this matter before you. This case, it turns on a legal error and a misapprehension of the legal effect of a ruling. At summary judgment, the district court ruled that there was no contract, no legally binding agreement between the parties as of March 12, 2015. That's the date that WWW ended its relationship with Primark. And that ruling was supported by a series of emails sent over 2009 and 2010, a two-year period wherein Primark's president is repeatedly asking WWW for an agreement to provide Primark some protection against an abrupt termination of supply. In these emails, Primark's president is expressly acknowledging that under those circumstances that the parties were doing business in 2009 and 2010. And thereafter, WWW was within its rights to end supply to Primark at any time. Whether the court, the district court, used the word arrangement or agreement or a course of dealing or relationship, whatever you categorize the relationship as being, there was a firm and express understanding that WWW was not under any obligation, contractual or statutory, to provide notice. And then the error of law comes in. Despite correctly ruling that there was no legally binding agreement, which undermines the rest of Primark's claims, the district court allowed the case to proceed to trial. Now, I will admit that there's some ambiguity in the district court's opinion in the summary judgment motion. However, the district court clarified that ambiguity on multiple occasions, most notably by granting motion eliminated number four. WWW's motion eliminated number four sought to bar any evidence of an agreement between the parties after June of 1993, oral, written or otherwise. And in fact, the language of the motion itself said, whether there was a valid and enforceable distribution agreement included between the parties as of March 12, 2015 is no longer a matter at issue and any purported evidence of such an agreement is irrelevant under Federal Rule of Evidence 402. This language encompasses any contract that would have been formed, but by a course of dealing or in any other way under the Uniform Commercial Code. My brother, Mr. Lawler, recognized the dispositive effects of this ruling and argued at oral argument on this motion that if the court grants it, it has the effect of granting a directed verdict before the trial even begins. Counsel went so far as to say, if your honor has ruled that there's no triable issue of fact as to whether or not there is a legally binding agreement, we should not be here. So although the court allowed Primark to share some of the history between the parties during the trial to quote-unquote set the table, the court doubled down on its ruling on Motion in Limine No. 4 when at sidebar, I asked the court, after the 1993 agreement expired, there were no further agreements and your honor ruled on that issue on summary judgment. So anything after 1993 should be excluded because it has a high probability of confusing the jury and confusing the issues or misleading the jury. And the court responded, all right, so I agree. And I'll be mindful of that as we move forward. So the court agreed that there was no agreement after 1993 and no such evidence should be allowed at trial. It is therefore impossible for a reasonable, competent jury to come back with a verdict that there was a contract between these parties as of March 12th, 2015. At trial, was evidence put forward of the course of dealing? Great question, Judge. And I would say that there's no competent evidence that was put forward. Of course, throughout the testimony that Primark's president gave, he attempted to put in evidence that was excluded. Well, we had this long history. I felt I could rely on some additional supply as we moved forward over myriad objections. The transcript, as I'm sure you saw, is peppered with objections to this type of testimony. What are you challenging on appeal then with respect to this issue? I'm not quite... Where is the error that you are... Was it an error that he allowed that evidence to go forward at trial? Was it the error that... Was the denial of summary judgment motion? Where are you saying the error occurred for purpose of this appeal? Thank you, Judge Barron. Great question. So the error started at summary judgment, and it has persisted, and it was repeated. And for our purposes here today, if you will allow me to share what happened right after this exchange with the judge, I asked the judge... No, I don't want to know what happened. I want to know... Well, this is the error. This is your cross-appeal argument? Absolutely. The error that we're challenging on our cross-appeal... Is what? The judge's failure to grant our directed verdict motion at the beginning of... Excuse me. After the conclusion of plaintiff's evidence, and then again after the conclusion of evidence. At that point, the evidence, the testimony about the course of dealing was before the jury. We moved for directed verdict before the plaintiff's testimony, moved for directed verdict after the plaintiff concluded its case in chief, and when we renewed our motion for directed verdict after the exchange of evidence, after evidence was closed. And the point I want to make, Judge, is the judge, the district court, instructed www, instructed me and my co-counsel not to put on our evidence that there was no agreement between the parties as of March 12, 2015. I reminded the court that he had already decided this, that this was something that was already ruled upon, and although there was an error of law made, applying section 2-309 and ruling that potentially the notice provision in 2-309 could apply and it required both parties to give each other's notice before taking steps to end the relationship. So we're not prepared to put forth our evidence that there is no contract, Your Honor, because you've agreed on that. You've already ruled on that. The court agreed and instructed us to limit any reference to the fact that there was no agreement and that is the entire case. If there's no agreement, then section 2-309 does not apply. If there's no contractual or statutory obligation to provide notice, www was free to compete with Primark at any point in time for business and to see supply. This is the crux of the case and we were prejudiced by that. Are you challenging the denial of the motion for directed verdict? I am, Your Honor. We're certainly asking... In the denial of the motion directed verdict, did the district court rely on the testimony about the course of dealing? There is no reasoned opinion along with that, Your Honor. We are not sure what was the basis of the court's denial, but we submit that that certainly was error. You said that there was no competent evidence, but that's a matter of opinion as to whether it was competent or not. Was there evidence of course of dealing? I would submit that that answer is no, Your Honor. Talking about the history between the parties, that was supposedly admitted to set the stage for the rest of the trial. It's not enough for us to have done business together for a long period of time to create a contract. What was required is a meeting of the minds and a present intention to be bound, and there was no such evidence. Just so I get it, for you to win on the rejection of the motion for directed verdict, one ground you claim you could win on is that if we review the evidence of course of dealing, we should find it was insufficient to support the denial of the motion for directed verdict. Your Honor, you're absolutely right. Especially taken in light. Do you have any other argument on your cross appeal as to why the denial of the motion for directed verdict was an error? Absolutely. Your Honor, one being the evidence that did come in, even though we were instructed to limit our evidence that there was no contract as of March 12, 2015, what did come in is the fact that Primark's president sent emails requesting a contract, requesting an agreement, and the key here... That all goes to the sufficiency of the evidence of course of dealing. I get that, but are you making it... Are you separately making an argument about you were prejudiced by not denying, by not being able to put on your own case because you were misled by the district court? We were certainly prejudiced by not being able to put on our case... But you made that argument to us in your challenge on the cross appeal to the motion for directed verdict. We certainly have. And I also submit that that is evidence of the trial court's error. No, it's evidence of the trial court's prior ruling that there was no agreement between the parties. For the trial court to instruct us... Thank you. For the trial court to instruct WWW not to put on its evidence that there was no trial when that is at the core of this case. The only logical conclusion is that the trial court had already decided this issue and it was no longer a triable issue for the jury. At the end of evidence, the trial court realized that it was stuck. We're here. We shouldn't be here. However, we've just had five days of trial. Now what? We've had a devil of a time fashioning a charge because if there's no legal agreement, everything else falls aside, including the tortious interference claim. So as my brother, Mr. Lawler said during oral argument on a motion to eliminate, if this is true, your honor, and you grant this motion, we shouldn't be here for this trial. So that's the situation that we find ourselves in. And we've asked, we ask your honor to deliver the justice that has eluded WWW thus far and enter... Can I ask you two questions about, or maybe it's one question about what, if we were to review the record and think that your narration of what happened was accurate, there's two possibilities I can see. One is that the error is that there was insufficient evidence to support the denial of the directed verdict. The result of that would be we grant the directed verdict and that ends the whole case. The other possibility is that although the evidence that actually went before the jury might have been sufficient so that you'd lose on your challenge to the denial of the motion of directed verdict, the whole thing got bollocked up enough that it's not fair to you because you never got to present your case to the jury. What would be the appropriate remedy? We vacate the whole, all the verdicts and you go back to square one or what happens then? Certainly we prefer the first option. And I would believe when you review the evidence, you'll also see, Judge Barron, that there was sufficient evidence to support the trial court's original ruling that there was no agreement between the parties. If there's no agreement between the parties, then a directed verdict should have been entered in WWW's favor. We can do that after there was some evidence put forward before the jury. No, I guess what I'm suggesting now, Your Honor, is that the relief that we're requesting is for this court to enter judgment in favor of WWW. As you described in your first option. But I'm saying if we didn't do that, are you separately arguing that there was prejudice from the rulings denying you the opportunity to put forth your case before the jury or is that not an argument you're making on this appeal? We were certainly prejudiced by that decision. But that's an argument you're making in the notice of cross, in your cross appeal, you make that argument? We don't call it out as an issue, but it's certainly within our papers. And I want to just really quickly respond to my brother's arguments about prejudgment interest and duplicative awards. So we have case law that we've cited in our briefs that you, Your Honor. I don't want to harp on this too much, but I just, I need to understand what I'm supposed to do. We have a record in which there was some testimony, of course, of dealing. I completely understand the argument that if that evidence was insufficient, the denial of the directed verdict was an error. You have separately told us that although there was evidence, of course, of dealing, it never should have been there, but it was there. You're only appealing from the denial of the motion for directed verdict. You also tell us that you were denied an opportunity to present a countervailing case as to the issue, of course, of dealing before the jury. But you just seem to say that although you mentioned those facts, you didn't call that out as an issue in your cross appeal, which sounds to me like that might have been waived. At which point, if that's waived, then the only issue for us is whether the evidence that was actually before the jury as course of dealing is enough to support the denial of the motion for directed verdict, which you could still win on, but that would be the only issue for us. And I'm trying to figure out if in your cross appeal, you're saying, even if you lose on that issue, you have cross appealed, raising a different error. Let me be clear, Judge, and thank you for that. So our requested relief is for the court to enter judgment in favor of WWW on the error that was the trial court's denial of our motion for directed verdict. And that is based on its prior ruling that there was no agreement between the parties as of March 12, 2015. Also the evidence that came in that Primark had substituted arrangements as of March 12, 2015. So therefore, if section 2-309 applies, there is no damage that can come from same day notice. And the title bond case makes that clear. If that wasn't the case and Primark didn't have substitute arrangements, it would have breached, just let me conclude by saying it would have breached its obligations under 2-309 by surreptitiously working with WWW's competitors to copy its product line and move WWW's business over to its competitors without giving notice to WWW. So for either of those reasons, we would ask that the court enter judgment in WWW's favor. It's a matter of law. Is there evidence in the record as to the latter point? Oh, good to see you, Judge. Yeah, but my electricity just came back on. Please repeat your question, I apologize. Is there evidence in the record about your assertion that they were working with other suppliers? Or is that evidence that you would have put on but didn't because of the court's ruling? Thank you for that. Thank you for that question, Your Honor. It would take you an hour to get through the evidence in the record at trial of Primark working with our suppliers behind our backs, asking them not to put information in emails so that it wouldn't get out that they were doing it. Everything you could imagine is in there with respect to Primark not only taking steps to replace WWW, but strategically siphoning business from WWW, using these competitors to copy our products and slowly move business over to those competitors. And Primark argues that we should have given them 90 days to finish replicating the rest of our product line so they could have moved 100% of their business from WWW to our competitors before they gave us notice that they were doing so. So they implemented their exit plan. So that's in the record? Yes, ma'am. Yes, Your Honor. I'm happy to answer any other questions, but I know my time is up. Very good. All right. Attorney Lawler is going to do six minutes for rebuttal, Judge. That's right. Go ahead, Counsel. Attorney Lewis, please mute your microphone and mute your video, and then Attorney Lawler, you can begin. With respect to the last point raised by Judge Thompson, the evidence was uncontroverted that the parties did not have an exclusive supply distribution agreement. Both the owners of WWW testified in cross-examination that Primark was free to use other suppliers, and on direct testimony by Primark's president, he offered a handful of examples to illustrate his use of other suppliers during the party's long course of dealings. And with respect to a suggestion that Primark terminated the party's distribution agreement first, the evidence was that in calendar year over calendar year, Primark actually bought more soup base, $80,000 more soup base in 2014, the calendar year before the termination, than they had the previous year. So the jury's verdict was certainly rational that they could have concluded that Primark had not terminated its relationship with WWW first. Going back to Judge Barron's questions. How do you address the result of the motion, the court's motion in Lemonade, and defendants' argument that they were prejudiced because they were prevented from putting on evidence of the non-existence of a contract? Right. Working my way backwards. If you'll take a look at the record, it's at 1750 through 1752 or three. Those that were admitted as trial exhibits 66 and 67. Those are the emails back and forth between my client and the owner of WWW back in 2009 that Mr. Lewis I think overstates the significance of. But anyhow, that was the key evidence from their point of view that the parties did not have an agreement because my client had asked for a one year notice period before termination and the other side said no. The other side, however, in the same letter said we expect and will continue to do business for many, many, many years. Great years, I'm sorry. There were three many's in that quote. And then so in our view of the evidence and what would have been rational for the jury to conclude is that that was limited to the amount of notice, not that the party's relationship was a order by order at will relationship. You're saying there was a contract? I'm saying that there was a contract. You will find it by the party's course of conduct over 34 years, your honor. Under the party's relationship was governed by the UCC, which permits a contract to be recognized as a contract. And here, over 34 years, 250 orders. What we're trying to untangle is this district court limine ruling. And I'm trying to figure out, did the court specifically as a matter of law, pre-trial make a determination that there was no contract and that no one would be allowed to put in evidence of contract after March? I understood his order to mean you can't put in evidence of a written agreement or an oral agreement and that he left open the path to establish a contract under 2-204-1 of the UCC by the party's course of conduct. And to cement the point, and it's in our second brief, is I asked for clarification. I asked specifically for the authority to introduce the party's course of conduct to establish that they had a contract. And the judge ruled on that from the bench and he said, yeah, you can put that stuff in. And then what cements this view of the judge's view of the case is he put in his trial jury instructions that Primark could prove a contract through the party's long history of multiple repeated continuous transactions. And had he thought that Primark could not prove his contract through a course of conduct, he never would have put that jury instruction in before the jury. So, as I say, the court certainly narrowed the path for us to prove a contract, but he left open a path and improved it in a rational way. In the motion of libany, the evidence that your opponent wanted to put in, I take it, was evidence about the non-existence of an oral or written agreement, as you understand it. And that's what he was saying, you can't put that in. Is that right? I understood as limiting us, your honor. I never thought about it. Frankly, I never thought about it from his perspective. And he certainly put in the key evidence on cross-examination of our witnesses on why he thought that there was no agreement between the parties. So I suggest he was not prejudiced because he got any evidence he would have put in. And he never raised it in his motion for directive verdict that he was prejudiced by exclusion of any evidence. That's time. So I thank you for your attention and request that you affirm the judgment in all respects, except for the ones outlined in our appeal concerning duplicate damages and prejudgment interest and the other issues we present. Thank you. Thank you. That concludes the argument.